## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BLACK ELK ENERGY OFFSHORE | § | Chapter 11 |
| OPERATIONS, LLC | § | |
| | § | Case No. 15-34287 (MI) |
| DEBTOR. | § | |

| | | |
|---|---|---|
| GUY E MATTHEWS, *et al* | § | |
| | § | |
| Plaintiff(s) | § | ADVERSARY NO. 16-3124 |
| | § | |
| VS. | § | |
| | § | |
| PLATINUM PARTNERS VALUE | § | |
| ARBITRAGE FUND, LP, *et al* | § | |
| | § | |
| Defendant(s) | § | |

## PLAINTIFFS' RESPONSE TO THE PLATINUM DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(6) AND 23.1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................... iv

INTRODUCTION............................................................................ 1

FACTUAL AND PROCEDURAL HISTORY.................................................. 1

ARGUMENT................................................................................4

    I.  Dismissal for lack of standing under 12(b)(1) is inappropriate....................... 4

        A. Legal Standard.......................................................................4

        B. Plaintiffs' claims do not belong to the estate....................................5

            1.  Plaintiffs' breach of fiduciary duty claims..................................6

            2.  Plaintiffs' breach of member agreement claims............................7

            3.  Plaintiffs' fraud claims......................................................8

    II. Dismissal under Rule 12(b)(6) is inappropriate...................................... 10

        A. Legal Standard..................................................................... 10

        B. Plaintiffs have plead sufficient facts to support a plausible right to
           relief on their breach of fiduciary duty claims...................................11

            1.  A fiduciary relationship existed between Plaintiffs and the Platinum
               Defendants ................................................................. 11

            2.  The Platinum Defendants breached their fiduciary duty................... 12

        C. Plaintiffs have plead sufficient facts in support of their claim that the
           Platinum Defendants breached the BEE member agreements.................15

        D. Plaintiffs have plead sufficient facts in support of their fraud claims......... 16

    III. Dismissal under Rule 23.1 is inappropriate.......................................   18

        A. Legal Standard.....................................................................17

        B. Rule 23.1...........................................................................18

    IV. Plaintiffs have not alleged double derivative claims.................................. 19

ii

V.  In the alternative, Plaintiffs request leave to amend their complaint.................. 20

CONCLUSION...........................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Acad. Of Skills & Knowledge, Inc. v. Charter Schs. USA, Inc.*, 260 S.W.3d 529, 536 (Tex. App.—Tyler 2008, pet. denied))..................................................................................................................15

*Allen v. Devon Energy Holdings, LLC*, 367 S.W.3d 355, 391-93 (Tex. App.—Houston [1st Dist.] 2012, pet. granted, *judgment vacated w.r.m.*). .................................................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..............................................................................10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)..........................................................10

*Blasband v. Rales*, 971 F.2d 1034, 1043 (3rd Cir. 1992) .............................................................19

*Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994) .................................................................10

*Collins v. Sydow (In re NC12, Inc.)*, 478 B.R. 820, 831 (Bankr. S.D. Tex. 2012)...........................5

*Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 529 (1984) .........................................................18

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981).........................................20

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) ....................17

*Four Bros. Boat Works v. Tesoro Petroleum*, 217 S.W.3d 653, 670 ...........................................17

*In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994). .............................5, 8

*In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 204 (5th Cir.2007)........................................10

*In re Seven Seas Petrol, Inc. v. Chesapeake Energy Corp.*, 522 F.3d 575, 584 (5th Cir. 2008)..............5, 9

*Ins. Co. of N. Am. v. Morris*, 918 S.W.2d 667, 674 (Tex. 1998)). ..............................................17

*Issner v. Aldrich*, 254 F. Supp. 696 (D. Del. 1966)....................................................................20

*Kaufman v. Wolfson*, 151 N.Y.S.2d 530, 532 (1956)..................................................................20

*Manon v. Solis*, 142 S.W.3d 380, 387 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ....................17

*Martin's Herend Imports v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999).......................20

*Massachusetts v. Davis*, 168 S.W.2d 216, 221 (Tex. 1942).........................................................6

*Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1003 (S.D. Tex. 2011)...................................15

*Opperman v. Opperman*, No. 07-12-00033-CV, 2013 WL 6529228, at *4 (Tex. App.—Amarillo Dec. 9, 2013, no pet.)..................................................................................................................11

*Redmon v. Griffith*, 202 S.W.2d 225, 234 (Tex. App.—Tyler 2006, pet. denied). ........................................6

*Ritchie v. Rupe*, 443 S.W.3d 856, 891 (Tex. 2014)............................................................................12

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003 ..................................................................20

*Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) ....................................................................17

*United States ex rel. Bias v. Tangipahoa Parish Sch. Bd.*, 816 F.3d 315, 321 (5th Cir. 2016)...................10

*Webre v. Sneed,* 358 S.W.3d 322, 334 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ...........................19

*Willis v. Bydalek*, 997 S.W.2d 798, 801 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). ............13, 14

*Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). ......................................................................6

*Xerox Corp v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989). ..................................................4, 20

## Statutes

Fed. R. Civ. P. 12(b)(6)..........................................................................................................10

Tex. Bus. Org. Code. Ann. §101.463...........................................................................................18

Tex. Bus. Orgs. Code §§. 21.701–.732 .......................................................................................13

Tex. Bus. Orgs. Code tit. 3, ch. 101 ...........................................................................................13

## INTRODUCTION

The Court should deny Defendants' PPVA Black Elk (Equity) LLC, PPVA Black Elk (Investor) LLC, Platinum Partners Value Arbitrage Fund, LP, PPVA Black Elk (US) Corp., Platinum Partners Black Elk Opportunities Fund LLC, PPBE Holdings LLC, PPBE Management LLC, David Levy, Mark Nordlicht, Gilad Kalter, Naftali Manela, Daniel Small, and Joel Edelstein (hereinafter "Platinum Defendants") Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 23.1.

## FACTUAL AND PROCEDURAL HISTORY

This case involves various breaches of fiduciary duties, contractual agreements, and fraud committed by Defendants during the operation and expansion of Black Elk Energy, LLC ("BEE") and Black Elk Energy Offshore Operations ("Black Elk Offshore"). BEE was established to act as a holding company for oil and gas companies. Black Elk Offshore was originally a wholly owned subsidiary of BEE.

In 2007, Thomas Andrus, White Marlin Energy Services, Inc., Guy Matthews, Stephen G. Lawrence, Carl Hammond and Carolyn Matthews ("Plaintiffs") made their initial investments in BEE based upon promises and representations made by Defendant Hoffman, who told Andrus, Marlin, G. Matthews, and C. Matthews that all transactions made through BEE would be transparent and disclosed to all seed investors and they would be consulted on and involved in making decisions with regard to any expansion of BEE and its future acquisitions and changes.

At the outset, Plaintiffs and Hoffman occupied the same position vis-à-vis BEE and Black Elk Offshore—that they were all shareholders of BEE, and through their ownership in BEE, had an interest in Offshore. Over time, Offshore attracted additional investors and BEE's stake shrank. However, until the Platinum Defendants' involvement, no other entity held a larger

1

stake in Black Elk Offshore than BEE. Moreover, not until the Platinum Defendants'
involvement did John Hoffman begin to grow his interest in the overall entity at the expense of
the investors in BEE.

At the end of 2009, BEE owned 40% of Black Elk Offshore. At the beginning of 2010,
BEE continued to hold a larger stake than any other entity. By August 2010, BEE's stake was
reduced to 4.45%, while Platinum's total stake in the company jumped from 9.9% to 69.03%.
Additionally, in late 2009, Hoffman represented to some or all of the seed investors that BEE
was valued at hundreds of millions of dollars. However, this was not BEE's valuation, but was
Black Elk Offshore's valuation.  Hoffman had knowledge that this was BEE Offshore's
valuation, rather than BEE's valuation, but he never corrected this false statement to the seed
investors.

Unlike Hoffman and the Platinum Defendants, Plaintiffs exercised no meaningful control
over BEE. And unlike Hoffman or the Platinum Defendants, Plaintiffs had no control over Black
Elk Offshore. Through the machinations of Hoffman and the Platinum Defendants, Plaintiffs
have seen their investment in Offshore dwindle while the interests of Hoffman and the Platinum
Defendants have gotten larger.

Defendant Hoffman formulated and directed the writing of the BEE "Member
Agreements," and those documents were composed at his instance and pursuant to his wishes
and instructions.  Plaintiffs and one or more of Defendants entered into one or more valid
Member Agreements.  When Defendant Hoffman presented the BEE Member Agreements to the
other investors (in particular Andrus, Marlin, G. Matthews, C. Matthews, Lawrence, and
Hammond) he told those investors that the Member Agreements conformed to earlier
representations that he had made to them.

2

Plaintiffs have also alleged that Hoffman, along with the Platinum Defendants, have grossly mismanaged Black Elk Offshore, which has directly harmed BEE and Black Elk Offshore. Hoffman's long history of mismanagement of BEE as well as a platform explosion drove the rating agency Standard & Poor's Financial Services LLC's ("Standard & Poor's") decision to warn investors about BEE's credit risk. Standard & Poor's downgraded BEE's credit rating citing the company's weak liquidity and the fact the company had "little capacity to absorb" unexpected expenses or liabilities. As such, Plaintiffs filed suit for breach of certain fiduciary duties, contractual agreements, and fraud committed by Defendants.

Plaintiffs filed suit individually, and derivatively on behalf of BEE, Hoffman, Offshore, certain Platinum Defendants, James Hagemeier, Black Elk Management, LLC, and Black Elk Employee Incentive, LLC, on September 9, 2011. The entire suit was dismissed on June 29, 2012, because the Texas trial court believed that a forum selection clause in various credit agreements entered into between Black Elk Offshore and the Platinum Defendants required that the suit be maintained in New York.

On March 22, 2013, Plaintiffs filed the instant suit in the Supreme Court of the State of New York. On August 11, 2015, an involuntary bankruptcy petition was filed against Black Elk Offshore in the Houston Division of the Bankruptcy Court for the Southern District of Texas. The Bankruptcy Court converted the Black Elk Offshore bankruptcy to a Complex Chapter 11 and designated it a Complex Chapter 11 case. On November 30, 2015, Plaintiffs removed the case from New York state court to the United States District Court for the Southern District of New York. On March 2, 2016, Plaintiffs filed a motion to transfer to the Southern District of Texas pursuant to 28 U.S.C. § 1404. The Court granted Plaintiffs' motion and the case was assigned to the Honorable Gray Miller, who referred it to this Court on May 13, 2013.

3

## ARGUMENT

In light of the dilution and obvious mismanagement, Plaintiffs allege four causes of action against the Platinum Defendants: (1) breach of fiduciary duty through minority oppression, (2) breach of fiduciary duty through gross mismanagement, (3) breach of member agreements, and (4) fraud. The Platinum Defendants contend that Plaintiffs' claims should be dismissed on four grounds: (1) Plaintiffs' claims belong to the bankruptcy estate of Black Elk Offshore; (2) all of Plaintiffs injuries should be classified as derivative claims, and therefore such claims should be dismissed for failure to satisfy Federal Rule of Procedure 23.1's requirements for pleading derivative actions; (3) Plaintiffs' claims should be classified as "double derivative claims," which they contend are improper as a matter of law; and (4) 12(b)(6) requires dismissal because Plaintiffs' factual allegations cannot support a claim. These arguments presented by the Platinum Defendants are based on mischaracterizations of Plaintiffs' claims and are without merit. Accordingly, as Plaintiffs will demonstrate herein, the Motion to Dismiss should be denied.

## I.   Dismissal for lack of standing under 12(b)(1) is inappropriate

### A.   <u>Legal Standard</u>

Standing challenges are dealt with under Federal Rule of Civil Procedure 12(b)(1). In deciding a 12(b)(1) motion, "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Xerox Corp v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989).

### B. **Plaintiffs' claims do not belong to the estate**

The Platinum Defendants seek dismissal on grounds that Plaintiffs have no standing to assert their claims because they belong to the Bankruptcy Estate of Black Elk Offshore. Whether a particular state-law claim belongs to the bankruptcy estate depends on whether under applicable state law the debtor could have raised the claim at the commencement of the case. *In re Seven Seas Petrol, Inc. v. Chesapeake Energy Corp.*, 522 F.3d 575, 584 (5th Cir. 2008); *see also In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994). As part of this inquiry, courts look to the nature of the injury for which relief is sought and consider the relationship between the debtor and the injury. *In re Seven Seas Petrol, Inc.*, 522 F.3d at 584. "If a cause of action alleges only indirect harm to a creditor (i.e., an injury that derives from harm to the debtor), and the debtor could have raised a claim for its indirect injury under the applicable law, then the cause of action belongs to the estate." *Collins v. Sydow (In re NC12, Inc.)*, 478 B.R. 820, 831 (Bankr. S.D. Tex. 2012). "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not the property of the estate." *In re Educators Group Health Trust*, 25 F.3d at 1284.

At the outset, it should be noted that Plaintiffs have only explicitly asserted a derivative cause of action based on injuries to BEE; they have not explicitly asserted a derivative cause of action based on harm to Black Elk Offshore. *See* Ex. A at ¶ 141. The Platinum Defendants contend that under applicable state law, Black Elk Offshore could have raised every claim Plaintiffs bring in this lawsuit. The Platinum Defendants rely on mischaracterizations of Plaintiffs' claims to support their argument.

### 1. *Plaintiffs' Breach of Fiduciary Duty Claims*

A cause of action arising solely from an injury to the property of a corporation, or from the impairment or destruction of its business, vests in the corporation as opposed to its stockholders. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). This is true even though stockholders may indirectly suffer a loss of earnings. *Id.* "Generally, the individual stockholders have no separate independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock." *Id.* However, "[t]his rule does not prohibit a stockholder from recovering damages for wrongs done to him individually 'where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder.'" *Id.* (quoting *Massachusetts v. Davis*, 168 S.W.2d 216, 221 (Tex. 1942)).

Members of a limited liability company or shareholders may individually seek damages for the violation of their shareholder rights, so long as they are not derivative of damages to the corporation or limited liability company. *See In re NC12, Inc.* 478 B.R. at 835. A loss of shareholder influence may also result in a direct injury to shareholders. *Id.* "It is the nature of the wrong, whether directed against the corporation only or against the shareholder personally . . . which determines who may sue." *Redmon v. Griffith*, 202 S.W.2d 225, 234 (Tex. App.—Tyler 2006, pet. denied).

Here, the Platinum Defendants argue that Plaintiffs' breach of fiduciary duty claims allege only indirect harm. However, they mischaracterize these claims by stating, "[a]ccording to Plaintiffs, the Platinum Defendants' decisions regarding Black Elk caused direct harm only to Black Elk [Offshore]" and that Plaintiffs provide no indication of any harm to shareholders other than the harm to BEE. *See* Doc. 39 at 6.   Contrary to the Platinum Defendants' mischaracterizations, Plaintiffs do not allege only indirect harm. In their Amended Complaint,

6

Plaintiffs allege that the Platinum Defendants had requisite control over Black Elk Offshore and failed to disclose to BEE and its members their opportunity to exercise certain rights and asserted dominion over distributions from Black Elk Offshore that BEE had in interest in sharing. *See* Ex. A at ¶ 80-82.  These actions did not merely result in generalized harm to Black Elk Offshore. Rather, these actions resulted in the unfair dilution of BEE's ownership interest in Black Elk Offshore, which is a harm specific to BEE and Plaintiffs.

Because Plaintiffs' causes of action concern direct harm to BEE, Black Elk could not have raised them. Therefore, Plaintiffs' breach of fiduciary duty claims do not belong to Black Elk's bankruptcy estate.

### 2. *Plaintiffs' Breach of Member Agreement Claims*

As noted above, a stockholder may recover damages "for wrongs done to him individually 'where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder.'" *Wingate*, 795 S.W.2d at 719. Plaintiffs allege in their amended complaint that the member agreements "created a fiduciary duty and duties of loyalty, care and disclosure owed to Plaintiffs by Defendants." *See* Ex. A at ¶ 108. Moreover, they allege that "Defendants breached the BEE Member Agreements by asserting dominion over distributions from BEE Offshore and BEE that Plaintiffs had an interest in sharing as members and seed investors." *Id.* at ¶ 116. Plaintiffs also allege they were harmed because they were not informed about the issuance of shares and the opportunity to exercise preemptive rights. *Id.* at ¶ 114.

Again, these allegations do not concern only generalized harm to Black Elk Offshore. The Platinum Defendants owed Plaintiffs fiduciary duties by virtue of the member agreements,

and their breaches of those duties resulted in an individualized harm to BEE. Accordingly, Plaintiffs' breach of member agreement claims do not belong to the bankruptcy estate.

### 3. *Plaintiffs' Fraud Claims*

Courts routinely hold that fraud claims are not part of the bankruptcy estate. *See In re NC12*, 478 B.R. at 836 – 37; *see also In re Seven Seas*, 522 F.3d at 586; *see also In re Educators Group*, 25 F.3d at 1285. For example, in *In re Educators Group*, a group of school districts obtained health benefits from Educators Group Health Trust (EGHT).*In re Educators Group*, 25 F.3d at 1283. After the trust went bankrupt, the school districts sued EGHT's third party administrators on various theories, including fraud. *Id.* The court determined that some of the school district's claims belonged to the bankruptcy estate, reasoning that they alleged injuries to the school districts that derived from direct injury to EGHT. However, the court also determined that the fraud, conspiracy to commit fraud, and misrepresentation claims belonged solely to the school districts. The court reasoned:

> We do agree...with the plaintiff school districts' contention that some of the causes of action allege a direct injury to themselves, which is not derivative of any harm to the debtor. For example, the plaintiff school districts allege ... that the defendants intentionally misrepresented *to them* the financial situation of EGHT, and that they materially relied on such representations to their detriment. To the extent that this cause of action and others allege a direct injury to the plaintiff school districts, they belong to the plaintiff school district and not the estate.

*Id.* at 1285.

Like the plaintiffs in *In re Educators Group*, the Plaintiffs' fraud claims against the Platinum Defendants stem from direct injuries to BEE, which are not derivative of any harm to Black Elk Offshore. Plaintiffs allege fraud by nondisclosure against Defendants. *See* Ex. A at ¶ 139. Specifically, Plaintiffs contend that BEE was directly injured because Defendants failed to

8

disclose documents and material information, failed to disclose occurrences and instances in which they were personally benefitting at the expense of Plaintiffs, and failed to disclose to BEE that they had opportunities to exercise certain rights in Black Elk Offshore. Similar to the claims in *In re Educators Trust*, Plaintiffs here allege that the Platinum Defendants failed to disclose to BEE material information, including the fact that BEE had opportunities to exercise certain rights in Black Elk Offshore. Accordingly, Plaintiffs' fraud claims do not belong to the bankruptcy estate.

Moreover, the fact that Black Elk Offshore may have also suffered its own direct injury because of wrongdoing on the part of the Platinum Defendants in no way precludes Plaintiffs from asserting claims that BEE suffered directly. In *In re Seven Seas*, the court found that claims asserted by bondholders against a defendant (Chesapeake) did not belong to the bankruptcy estate of Seven Seas because the bondholders' injury was not merely derivative of an injury to Seven Seas. *In re Seven Seas*, 522 F.3d at 587. The court explained:

> That is not to say, of course, that Seven Seas might not also have suffered its own direct injury because of some wrongdoing on the part of Chesapeake, or could not have brought any claims against Chesapeake as of the commencement of the case. . . . But the bondholders' claims and the estate's claims are not mutually exclusive: there is nothing illogical or contradictory about saying that Chesapeake might have inflicted direct injuries on both the bondholders and Seven Seas during the course of dealings that form the backdrop of both sets of claims.

*Id.*

Therefore, the fact that Black Elk Offshore also was injured by the conduct of the Platinum Defendants does not mean that Plaintiffs' claims for their direct injuries belong to the bankruptcy estate.

9

## II. Dismissal under Rule 12(b)(6) is inappropriate

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In ruling on motion to dismiss pursuant to Rule 12(b)(6), the district court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 204 (5th Cir.2007). To survive a defendant's Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Facial plausibility requires that the plaintiff 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *United States ex rel. Bias v. Tangipahoa Parish Sch. Bd.*, 816 F.3d 315, 321 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court's inquiry should focus on the complaint as a whole. *Id.* "Dismissal is improper if the allegations support relief on any possible theory." *Id.* (quoting *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir. 1994).

### B. Plaintiffs have plead sufficient facts to support a plausible right to relief on their breach of fiduciary duty claims

#### 1. A fiduciary duty existed between Plaintiffs and the Platinum Defendants

"Many courts have recognized that, depending on the circumstances of each case, an informal duty may exist between co-shareholders where there is a confidential relationship between the parties." *Opperman v. Opperman*, No. 07-12-00033-CV, 2013 WL 6529228, at *4 (Tex. App.—Amarillo Dec. 9, 2013, no pet.). Moreover, "officers or directors may owe a fiduciary duty to individual shareholders if a contract or confidential relationship exists between them." *Id.* Courts have reached the conclusion that shareholders owe one another fiduciary duties

10

on various rationales. *Id.* One such example arises when some shareholders have control and domination of a company's affairs, or when certain shareholders have access to insider or special information. *Id.*

Texas courts have further established that where a manager of a limited liability company essentially has the powers of a general partner, then the law imposes fiduciary obligations on that manager. *Allen v. Devon Energy Holdings, LLC*, 367 S.W.3d 355, 391-93 (Tex. App.—Houston [1st Dist.] 2012, pet. granted, *judgment vacated w.r.m.*). Specifically, where a manager/member of a limited liability company has "control of its operations" and "intimate knowledge of [the company's] daily affairs and plans," and other members do not have such knowledge, then the court will recognize a fiduciary relationship. *Id.*

In *Allen*, the court was faced with the question of whether the majority owner and manager of the LLC, Trevor-Rees Jones, owed the individual, minority shareholders a fiduciary duty. The court said yes. *Id.* In reaching its decision, the court considered Rees-Jones's position as manager of the company and his expertise in the oil and gas business. *Id.* Accordingly, the *Allen* case stands for the proposition that a manager of an LLC with intimate knowledge of the company's operations and superior expertise may owe a fiduciary duty to minority shareholders.

Applying *Allen* to the facts of the present case, this Court should find sufficient factual allegations in Plaintiffs' Amended Complaint to demonstrate the existence of a fiduciary relationship between Plaintiffs and the Platinum Defendants. The Platinum Defendants gained a controlling majority interest in Black Elk Offshore in 2009. *See* Ex. A ¶ 92. Plaintiffs also allege that the Platinum Defendants became involved in management decisions as majority shareholders at this time. *Id.* As such, these Defendants had an operating control over the affairs of Black Elk Offshore, which gave them intimate knowledge of the companies' daily affairs and

11

plans. *Id.* Given that Plaintiffs did not have intimate knowledge of Black Elk Offshore's daily affairs and plans, they placed special confidence in the Platinum Defendants' actions and management abilities. *Id.* The Platinum Defendants' actions and inactions regarding Black Elk Offshore *directly* affected BEE as a member of Black Elk Offshore. Thus, an informal fiduciary relationship was formed.

Furthermore, Plaintiffs will demonstrate the existence of a formal fiduciary relationship by virtue of the BEE Member Agreements. *See infra* II.C

### 2.   *The Platinum Defendants breached their fiduciary duty*

The Platinum Defendants also wrongfully assert that Plaintiffs' breach of fiduciary duty and minority shareholder oppression claim suffers from "fatal deficiencies." *See* Doc. 39 at 14. Defendants base this allegation on *Ritchie v. Rupe*—a case in which the Texas Supreme Court declined "to recognize a new common-law cause of action for 'minority shareholder oppression' in closely held corporations." *Ritchie v. Rupe,* 443 S.W.3d 856, 891 (Tex. 2014). Prior to *Rupe,* Texas appellate courts had recognized such causes of action based on a finding of "oppressive conduct," which was defined as:

1. [M]ajority shareholders' conduct that substantially defeats the minority's expectations that, objectively viewed, were both reasonable under the circumstances and central to the minority shareholder's decision to join the venture; or

2. [B]urdensome, harsh, or wrongful conduct; a lack of probity and fair dealing in the company's affairs to the prejudice of some members; or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely.

*See Willis v. Bydalek,* 997 S.W.2d 798, 801 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

However, the Texas Supreme Court had never recognized a cause of action for shareholder oppression. In declining to recognize a cause of action for shareholder-oppression in

*Rupe*, the Court was moved by the fact that the Texas Business Organizations Code "permits corporations to declare themselves to be 'close corporations,' which allows them to take advantage of two subchapters of the Code dedicated to the special needs of such corporations and exempts them from many of the rules that govern other types of corporations." *Id.* at 880 (citing TEX. BUS. ORGS. CODE §§ 21.701–.732). The Court found that by allowing a "closely held corporation" to elect to be a "close corporation," the Business Organizations Code provided an existing statutory remedy. *Id.* There is not a similar section of the Business Organizations Code allowing for "closely held limited liability companies" to become "close limited liability companies." TEX. BUS. ORGS. CODE tit. 3, ch. 101. In this case, the Platinum Defendants directly harmed 'Plaintiffs as a member of a closely-held limited liability company.  Therefore, the Court's holding in *Rupe* does not necessarily defeat Plaintiffs' claim for "oppressive conduct."

Even if *Rupe* did foreclose Plaintiffs' shareholder oppression claim, the oppressive conduct allegations concerning the Platinum Defendants state a claim for breach of fiduciary duty. As the Court noted in *Rupe*, "various common-law causes of action already exist to address misconduct by corporate directors and officers. Relying on the same actions that support their oppression claims, Texas minority shareholders have also asserted causes of action for: (1) an accounting, (2) breach of fiduciary duty, [and] (3) breach of contract." *Rupe*, 443 S.W.3d at 882.

In their breach of fiduciary duty and minority shareholder oppression claims, Plaintiffs allege that the Platinum Defendants breached their fiduciary "duties of loyalty, care, and disclosure, by asserting dominion over distributions from [Black Elk] Offshore and BEE that Plaintiffs had an interest in sharing as members and seed investors." *See* Ex. A at ¶ 81. Plaintiffs further contend that the Platinum Defendants breached their fiduciary duties by failing to convey all relevant information." *Id.* Plaintiffs also explain how the Platinum Defendants diluted BEE's

13

and its members' (including Plaintiffs') interests in [Black Elk] Offshore through a series of wrongful transactions. *See* Ex. A. at ¶ 82.

These allegations meet the definition of "oppressive conduct." First, they allege that Defendants' actions substantially defeated the BEE members' reasonable expectations that were central to their decision to join the venture. When Plaintiffs originally invested, they believed that they would have meaningful involvement in BEE's business affairs. This included involvement in the management of Black Elk Offshore—which BEE originally owned outright. However, due to the wrongful actions of Defendants (including the Platinum Defendants), BEE's ownership interest in Black Elk Offshore was severely diluted and as such Plaintiffs had no meaningful involvement in the management of Black Elk Offshore. Second, Plaintiffs allege "a lack of probity and fair dealing in the company's affairs to the prejudice of some members, or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely." *Willis,* 997 S.W.2d at 801.

Additionally, even if Texas does not recognize a cause of action for shareholder oppression, the Platinum Defendants have still engaged in conduct constituting a breach of fiduciary duty.

### C. Plaintiffs have plead sufficient facts in support of their claim that Platinum Defendants breached the BEE Member Agreements

A plaintiff in a breach of contract claim must allege (1) the existence of a valid contract, (2) performance by Plaintiffs, (3) breach by Defendants, and (4) damages resulting from the breach. *Motten v. Chase Home Fin.,* 831 F. Supp. 2d 988, 1003 (S.D. Tex. 2011) (citing *Acad. Of Skills & Knowledge, Inc. v. Charter Schs. USA, Inc.,* 260 S.W.3d 529, 536 (Tex. App.—Tyler 2008, pet. denied)).

14

Plaintiffs' Amended Complaint alleges "Plaintiffs and one or more Defendants entered into one or more valid Member Agreements" and that "[t]he BEE Member Agreements constituted valid, enforceable contracts." Ex. A at ¶ ¶ 107-108. Plaintiffs further they allege they performed their obligations under the agreements and paid the requisite investment amounts to become seed investors and members, and that Defendants breached the contracts. *Id.* at ¶ 110. Based on Plaintiffs' allegations in their Amended Complaint, it is clear that the BEE Member Agreements encompass the Black Elk Offshore Operating Agreement (Ex. B) and the Black Elk Energy, LLC Operating Agreements (Ex. C). *See* Ex. B, C. Each of these agreements recognizes the potential for a claim of breach of fiduciary duty and liability to the "Company" or to "any member," which includes Plaintiffs, under certain circumstances. *See* Ex. B at § 11.02; *see also* Ex. C at § 16.2(b). Under the Black Elk Offshore Agreement, those circumstances include fraud, which Plaintiffs have alleged against the Platinum Defendants. *See* Ex. C at § 16.2(b); see also Ex. A at ¶ 139. According to the Black Elk Energy Offshore Agreement, a board of managers managed the company. *See* Ex. C at § 6.1. This agreement also provided that the board would include one manager appointed by "Platinum or its Affiliates (the 'Platinum Manager')" "for so long as Platinum owns any Units." *Id.* BEE, as a member of Black Elk Offshore, signed this Operating Agreement.

Among Plaintiffs' breach of member agreement allegations are the contentions that BEE did not knowingly consent or approve to the certain actions or inactions of Black Elk Offshore, which was being managed in part by the Platinum Defendants. Specifically, Plaintiffs contend they did not approve the following: (1) any BEE Offshore document wherein incentive shares would be issued to Hoffman's and Hagemeier's other entities, (2) any share issuance by BEE Offshore to any members or non-members, and (3) any inaction by BEE with respect to failure to

exercise any preemptive rights held in Black Elk Offshore.  *See* Ex. A at ¶ 114. Moreover, Plaintiffs allege that Defendants breached the agreements by "asserting dominion over distributions from BEE Offshore and BEE that Plaintiffs had an interest in sharing as members and seed investors." *Id.* at ¶ 116.

The conduct alleged by Plaintiffs constitutes clear breaches of the Black Elk Energy Offshore Operating Agreement. BEE's right to receive distributions from Black Elk Offshore and their preemptive rights arise from the Black Elk Offshore Operating Agreement. *See* Ex. C at Art. 12. Thus, Plaintiffs have alleged with sufficient specificity the parties to the agreements, the key terms, and what and how those terms were breached.

### D. <u>Plaintiffs have plead sufficient facts in support of their fraud claims</u>

A Plaintiff asserting a claim for fraud must plead the following elements: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied on the representation. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)). "Fraud by omission is a subcategory of fraud because the omission or non-disclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose." *Four Bros. Boat Works v. Tesoro Petroleum*, 217 S.W.3d 653, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)  (citing *Manon v. Solis*, 142 S.W.3d 380, 387 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)). A failure to disclose may constitute fraud if there is a duty to disclose the information. *See id.* (citing *Ins. Co. of N. Am. v. Morris*, 918 S.W.2d 667, 674 (Tex. 1998)).

16

As explained above in Section II.B, an informal fiduciary relationship existed between the Platinum Defendants and Plaintiffs because the Platinum Defendants, had control and domination of a company's affairs and access to insider or special information. *See supra* II.B. As such, Plaintiffs placed a special confidence in the Platinum Defendants and expected to be informed of all material information regarding Black Elk Offshore.

Plaintiffs have alleged that that the Platinum Defendants "failed to disclose to BEE members (including Plaintiffs) BEE's opportunity to exercise certain rights in [Black Elk] Offshore." *See* Ex. A at ¶ 132. The Platinum Defendants' non-disclosure was "as misleading as a positive misrepresentation of fact" because it is the equivalent of representing that BEE did not have an opportunity to exercise their rights. *See id.* Such a representation would have been false at the time that the Platinum Defendants should have disclosed the existence of BEE's rights. Plaintiffs further alleged the Platinum Defendants failure to disclose constituted "material misrepresentations that were false" and made "with intent that Plaintiffs would act on them. *Id.* at ¶ 133. The Plaintiffs also stated that the material omissions by the Platinum Defendants were intentional, malicious, made with disregard for their truthfulness and accordingly constituted common law fraud by nondisclosure. *Id.* at ¶¶ 132 – 140.   Therefore, Plaintiffs have plead sufficient facts in support of its fraud claims.

### III. Dismissal under Rule 23.1 is inappropriate

#### A. <u>Legal Standard</u>

"Rule 23.1 applies in terms only to a 'derivative action brought by one or more shareholders or members to enforce a right of a corporation [when] the corporation [has] failed to enforce a right which may properly be asserted by it." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 529 (1984).

**B.  Rule 23.1**

The Platinum Defendants' argument that Plaintiffs' claims must be dismissed for failure to comply with Federal Rule of Procedure 23.1 rests entirely on the proposition that "all of Plaintiffs' claims are derivative" of harm. As explained above, not all of Plaintiffs' claims against the Platinum Defendants are derivative of harm to Black Elk because they allege wrongs directed specifically at BEE. Thus, Plaintiffs were not required to make a demand on Black Elk prior to bringing this lawsuit.

Moreover, even if all of Plaintiffs' causes of action against the Platinum Defendants were classified as derivative of harm to Black Elk Offshore, Section 101.463 of the Texas Business Organizations Code provides that "a derivative proceeding brought by a member of a closely held limited liability company may be treated by a court as a direct action brought by the member for the member's own benefit" if justice requires. TEX. BUS. ORGS. CODE. ANN. §101.463. Justice would plainly require treatment of these claims as a direct action.

Plaintiffs' Amended Complaint asserts a derivative action "for the benefit of BEE." *See* Ex. A at ¶ 142. Thus, to the extent Plaintiffs were required to make a demand prior to filing suit, such demand would only have been made on BEE—not Black Elk. Defendants note in their motion that Texas law prohibits any lawsuit on which a demand is based from being filed until at least 91 days after the demand is made. Defendants also note that the waiting period provides directors with time to decide in their business judgment whether litigation is even appropriate before a 'disgruntled shareholder' may file a derivative suit on a corporation's behalf. As Plaintiffs note in their petition, they did not make a demand on BEE because such a demand would have been futile. Even if Plaintiffs made a demand, the Platinum Defendants would not have been entitled to receive it. Therefore, in the interests of justice, they should not be permitted

to use Rule 23.1 as a means to dismiss Plaintiffs' claims. Nor should the Platinum Defendants be able to utilize Rule 23.1 by mischaracterizing the remainder of Plaintiffs' claims as derivative.

## IV. Plaintiffs have not alleged double derivative claims

The defendants argue that Plaintiffs cannot maintain this action because it is a double derivative action. "In a 'double derivative' action, the shareholder is effectively maintaining the derivative action on behalf of the subsidiary, based upon the fact that the parent or holding company has derivative rights to the cause of action possessed by the subsidiary." *Webre v. Sneed,* 358 S.W.3d 322, 334 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quoting *Blasband v. Rales*, 971 F.2d 1034, 1043 (3rd Cir. 1992)).

Based on that definition, Plaintiffs' claims do not fall within the meaning of a double derivative claim. Plaintiffs, as shareholders of BEE, seek to maintain a cause of action only on behalf of BEE—the holding company. In order for Plaintiffs' claims to qualify as double derivative, they would have to maintain a derivative action on behalf of Black Elk Offshore.

Nevertheless, even if Plaintiffs' claims are construed as double derivative claims, Texas recognizes such causes of action. *Webre* stands for the proposition that the shareholder must own shares in an entity that itself has a derivative right. *Id.* There is no requirement that the company own all of the subsidiary. *See, e.g., Issner v. Aldrich*, 254 F. Supp. 696 (D. Del. 1966) (implicitly recognizing the right of a shareholder of a Virginia corporation to bring a double derivative action claiming wrongdoing by directors and the remaining stockholder against the corporation's 50% owned subsidiary, but dismissing action for failure to show that demand was excused); *Kaufman v. Wolfson*, 151 N.Y.S.2d 530, 532 (1956) ("[s]uit by the stockholder of a parent corporation need not be limited only to situations in which the subsidiary is wholly owned or in which there is no one else who can sue"). Finally, at the time of the dilutive transaction in 2010,

19

no other entity owned more of Black Elk Offshore than did BEE. Platinum did not own a majority of Black Elk Offshore until this transaction.

**V.  In the alternative, Plaintiffs request leave to amend their complaint.**

Subject to and without waiving the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend their complaint in the event the Court concludes the Plaintiffs have not adequately pled their causes of action. "[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Xerox Corp v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989). Federal Rule of Civil Procedure 15(a) "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). Leave to amend shall be freely given when justice so requires. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003).

In this case, justice would require granting Plaintiffs leave to amend their complaint. The Platinum Defendants in this case have repeatedly used jurisdictional defenses to defeat Plaintiffs' claims, doing anything they could to prevent this case from moving forward on the merits. As a result, Plaintiffs discovery efforts have been hindered. Accordingly, in the event the Court finds that Plaintiffs have not adequately pled their causes of action, Plaintiffs respectfully request leave to amend their complaint.

## CONCLUSION

For the foregoing reasons, the Platinum Defendants' Motion to Dismiss should be denied. To the extent that any portions of the Motion to Dismiss are granted, Plaintiffs request leave to amend their complaint.

20

**ABRAHAM, WATKINS, NICHOLS,
SORRELS, AGOSTO & FRIEND**

*/s/Muhammad S. Aziz*
MUHAMMAD S. AZIZ
State Bar No. 24043538
Federal Bar No. 868540
800 Commerce Street
Houston, Texas 77002
Telephone: (713) 222-7211
Facsimile: (713) 225-0827
maziz@abrahamwatkins.com

**Attorney-in-Charge for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record by the Court's CM/ECF system, on this 20th day of September 2016.

*/s/Muhammad S. Aziz*
Muhammad S. Aziz